UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARY D. GEORGE,                                         **REPORT AND**
                                                                         **RECOMMENDATION**
                              Plaintiff,

                                                                         06-CV-00041A(M)
v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.

---

This case was referred to me by Hon. Richard J. Arcara to hear and report in accordance with 28 U.S.C. §636(b)(1) (Dkt. #19). Before me is defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. #10). For the following reasons, I recommend that defendant's motion be denied.

## PROCEDURAL BACKGROUND

Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (Dkt. #1). Plaintiff filed an application for SSI on March 29, 2004, and for DIB on May 6, 2004 (T14, 186-88).[1] The claims were initially denied (see T189). A hearing on both claims was conducted before Administrative Law Judge Steve Slahta on April 4, 2005 (T191-218). Plaintiff was represented at the hearing by Felice A.

---

[1] References to "T" are to the certified transcript of the administrative record filed by the defendant in this action.

Brodsky, Esq. (T31). On August 24, 2005, ALJ Slahta issued a decision denying plaintiff's claim on the ground that there were a significant numbers of jobs in the national economy that plaintiff could have performed (T11-21). The ALJ's determination became the final decision of the Commissioner on November 25, 2005, when the Appeals Council denied plaintiff's request for review (T5-7).

## THE ADMINISTRATIVE RECORD

### I.  Relevant Medical Evidence

Two weeks after he separated from his wife, plaintiff was hospitalized at the Niagara Falls Memorial Medical Center from September 17, 2003 to September 22, 2003, for depressive disorder and cannabis dependence (T81-86). He was prescribed Wellbutrin and directed to undergo counseling (Id.).

On January 18, 2004, plaintiff was treated at Niagara Falls Memorial Medical Center, after he was arrested for assaulting his wife (T87). From January 19, 2004 through January 26, 2004, he was admitted to BryLin Hospital, where he was diagnosed with recurrent major depression and marijuana dependence (T89-91). He was prescribed Lexapro during his stay at BryLin (T100). Upon discharge he was found to be in "good emotional control" and prescribed Lexapro, with directions to seek follow-up care for substance abuse and "psychiatric linkage" with the Niagara County Department of Mental Health (T120).

The progress notes from Niagara County Mental Health for the period January 2004 to May 2004 indicate that plaintiff's GAF had improved from 58 to 76 by May 2004 (T126-

33).[2] The March 23, 2004 treatment note indicates that plaintiff was "responding quite well from his lexapro" (T129) and "shows no major problems" (T129). However, his May 10, 2004 treatment note indicates that he "shows only a mixed response to treatment" (T127).

Mark C. Lanze, Ph.D., a psychologist, completed a Mental Impairment Questionnaire dated March 10, 2005 indicating that he had been treating plaintiff weekly since August 5, 2004. The questionnaire noted that plaintiff could not handle complex instructions or tasks, could not deal with the public, had marked restriction of his activities of daily living, extreme difficulties with social functioning, and constant difficulty maintaining concentration (T155-60). The record also contains a letter dated April 3, 2005, from Dr. Lanze to plaintiff's counsel indicating that he treats plaintiff for major depressive episode, mixed anxiety and depressive disorder, and post-traumatic stress disorder (T161). Dr. Lanze further noted that plaintiff's symptoms included poor memory, difficulty thinking and concentrating, decreased energy, recurrent panic attacks, sleep disturbance, mood disturbance and appetite disturbance (Id.). Moreover, Dr. Lanze indicated that within the past seven months of treatment plaintiff had achieved a GAF score no higher than 57, and that his prognosis was for "insignificant overall improvement" (Id.).

---

[2] "The Global Assessment of Functioning ("GAF") is a rating for reporting the clinician's judgment of the patient's overall level of functioning and carrying out activities of daily living. The GAF score is measured on a scale of 10-100, with a higher number associated with higher functioning." Montalvo v. Barnhart, 457 F. Supp. 2d 150, 160 n. 5 (W.D.N.Y. 2006) (Elfvin, J.) (citing Wikipedia org). A GAF of 51-60 indicates "[m]oderate symptoms or any moderate difficulty in social, occupational, or school functioning" and a GAF of 71-80 indicates that "[i]f symptoms are present they are transient and expectable reactions to psyche social stresses; no more than slight impairment in social, occupational, or school functioning" Global Assessment of Functioning, available at Wikipedia.org.

Plaintiff treated on a monthly basis with psychiatrist Mark Varallo, M.D., from December 2, 2004 through March 2005. Throughout his treatment, Dr. Varallo diagnosed plaintiff with depression not otherwise specified, and indicated that his prognosis was guarded (T163-67). Dr. Varallo's December 2004 treatment notes indicate that plaintiff "began to feel depressed when he realized wife was having an affair" (T163). At that time his memory was intact and his judgment was fair (Id.). In January 2004 plaintiff noted that he used Xanax, which helped, "but only for so long" (T165). In February 2004 plaintiff stated that his prescription of Buspar was not "helping much", but that his mood was "ok" (T166). In March 2005, plaintiff denied overt depression, anxious mood, and mood swings (T167).

Preshant Pendyala, M.D., commenced treating plaintiff in September 2003, and continued to treat plaintiff every four months (T121). Dr. Pendyala completed a disability determination dated May 20, 2004 in which he diagnosed plaintiff with depression (T121-25). Dr. Pendyala also submitted a "Medical Opinion re: Ability To Do Work-Related Activities" dated March 17, 2005 (T168-71), in which he indicated that pain did not impair plaintiff's ability to concentrate (T169). However, Dr. Pendyala found that plaintiff's depression limited his physical activities to carrying no more than 10 pounds on an occasional basis during an eight hour day, standing and walking no more than 2 hours during an eight hour day, sitting a maximum of 2 hours during an eight hour day, and required him to lie down at unpredictable intervals during a work shift (Id.). Dr. Pendyala also found that plaintiff's carpal tunnel affected his ability for handling and fingering, but did not affect his reaching, feeling or pushing/pulling (T170). Overall, Dr. Pendyala opined that plaintiff's impairments and treatment would cause him to be absent from work approximately once a month (T171).

Although not addressed by either party or ALJ Slahta, there are numerous treatment notes from Harnath Clerk, M.D., who treated plaintiff from April 23, 2004 through March 17, 2005 for depression and carpal tunnel syndrome (T168-182).

### A.     Consultative Examinations

George Burnett, M.D., a non-examining state agency medical consultant, performed a Mental Residual Functional Capacity Assessment in June 2004, finding only mild restrictions with his activities of daily living and social functioning (T134-50, see 148). However, Dr. Burnett found that plaintiff had moderate difficulties with concentration, persistence or pace, and had two episodes of decompensation (Id.).

Plaintiff also received an internal medicine consultative examine by Fenwei Meng, M.D., on July 6, 2004 (T151-54). Dr. Meng found that plaintiff's "motor skills show minimal limitation with carpal tunnel syndrome" (153-154). He also found that plaintiff's "major problem is depression and drug abuse", and that he "needs a psychiatric evaluation" (T154).

## III.    Administrative Hearing Conducted on April 4, 2005

### A.     Plaintiff's Testimony

Plaintiff was 33 years old at the time of the hearing (T193). He has three young children who reside with his ex-wife (T196). He has a high school education and completed two years of college (T193). Plaintiff's past work experience includes employment as a painter and lumber salesman (T194-96).

Plaintiff testified that he stopped working after he and his then-wife agreed he would stay home to care for their children (T198). Plaintiff testified that he no longer has suicidal

thoughts (T206, 212), but had difficulty sleeping and concentrating (T201-03, 205). He also testified that he has panic attacks up to three times a day and has difficulty socializing (T202-03). Plaintiff ceased using marijuana in December 2003 (T207).

Plaintiff complained of numbness in his arms, which persisted for the previous three years (T204). He was told by his physician that he had carpal tunnel syndrome (Id.) and wears a wristband at night prescribed by a specialist (T204, 208).

Plaintiff maintains a driver's license and drives regularly (T197-98, 211), has visitation with his children on Wednesdays after school and overnight every other Friday (T202, 210-12). He watches movies and plays video games (T203, 212-13). His roommate cooks for him and he goes grocery shopping with her (T205). Plaintiff has also applied to two local colleges through Vocational and Educational Services for Individuals with Disabilities (T209).

### B. Vocational Expert Testimony

Vocational expert Timothy P. Janikowski, Ph.D., C.R.C., categorized plaintiff's past job of painter as medium in exertion and skill (T214). Plaintiff's past job in lumber sales and customer service were classified as light and semi-skilled (T217). Dr. Janikowski testified that an individual with plaintiff's work restrictions and residual functional capacity, is capable of making a vocational adjustment to other work, namely packager (900 positions in Western New York, 199,000 nationwide), and assembler (4,100 positions in Western New York, 690,000 nationwide) (T215). Dr. Janikowski further testified that a number of the assembler jobs would require fine manipulation and finger dexterity, but that the hand packer jobs would only require gross manipulation (T215-216).

## ALJ Slahta's Decision dated August 24, 2005

ALJ Slahta found that plaintiff had the following severe impairments: depressive disorder and history of cannabis dependency (T17). However, ALJ Slahta found that the plaintiff did not have an impairment or combination of impairments which met or medically equaled the criteria of an impairment defined in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No.4. (Id.) Concerning plaintiff's carpel tunnel syndrome, ALJ Slahta found that there were are no findings on physical examination to document a severe impairment with significant functional limitations (T17).

ALJ Slahta relied on plaintiff's testimony that his cannabis dependency was in remission and had not used marijuana since 2003 (Id.). Additionally, he found that plaintiff had undergone treatment for his depressive disorder, including counseling and medication, which improved his symptoms (Id.). He also found that plaintiff was "seeking college, taking care of his children, and beyond his stressful divorce, are all factors establishing mental stability . . . ." (T17).

ALJ Slahta did not afford significant weight to Dr. Lanze's opinion, finding that:

> "The psychiatric records of Dr. Varallo are inconsistent with the assessment of the psychologist, Dr. Lanze. Dr. Lanze finds marked and extreme limitations with GAF never rising above 57. Dr. Varallo does not indicate the limitation alleged by Dr. Lanze. He shows a good response to medications. The progress notes [from Niagara County Mental Health] show the claimant's GAF improving from 58 to 76 by May 2004. The assessment of Dr. Lanze cannot be accorded significant weight when his own treatment notes do not document symptoms of the severity alleged and the balance of the medical reports show improvement in response to medication and counseling" (T17).

Based on these findings, ALJ Slahta concluded that the plaintiff had the residual functional capacity for "light work with no exposure to hazards or heights, provided work

unskilled 1-2 step, routine and repetitive with no people" (T18). He found that although plaintiff did not retain the residual functional capacity to perform past relevant work as a painter or as a lumber salesman, plaintiff was capable of making a successful adjustment to another field of work based on Dr. Janikowski's testimony that individuals with conditions similar to plaintiff could work as a packager or assembler, for which there were numerous positions locally and nationally. Therefore, he concluded that plaintiff was not under a disability at any time through the date of his decision (T19).

## DISCUSSION AND ANALYSIS

### I.  Scope of Judicial Review

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited. This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner. Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the Commissioner's decision may be reversed only when it is based on legal error or is not supported by substantial evidence in the record as a whole. Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's

independent analysis of the evidence may differ" from that of the Commissioner. Martin v. Shalala, 93-CV-898, 1995 WL 222059, at *5 (W.D.N.Y. March 20, 1995) (quoting Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, I must first determine "whether the Commissioner applied the correct legal standard". Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.

## II.     The Disability Standard

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical

> evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000) (citing DeChirico v. Callahan, 134 F. 3d 1177, 1179-80 (2d Cir. 1998)); see 20 C.F.R. §§404.1520, 416.920.

### III.   Analysis

Plaintiff argues that ALJ Slahta failed to afford Dr. Lanze's opinion controlling weight (Dkt. #14, p. 4-5). Defendant argues that ALJ Slahta did not err in rejecting Dr. Lanze's opinion, because it was contradicted by other substantial evidence in the record (Dkt. #11 pp. 9, 16). Plaintiff also argues that ALJ Slahta failed to properly set forth with sufficient specificity his rationale for finding plaintiff "not totally credible" (Dkt. #14, p. 3-4; see T20). Defendant, on the other hand, maintains that ALJ Slahta properly determined that plaintiff was not totally credible because his self-described activities conflicted with his allegations of limitation (Dkt. #17, p. 4).

Here, the record demonstrates that there is conflicting medical evidence as to plaintiff's functional limitations from his psychological impairments. Plaintiff received outpatient treatment from Niagara County Mental Health from January 2004 to May 2004 (T126-133). During this period, plaintiff's GAF improved from 58 to 76 by May 2004, while taking Lexapro and receiving counseling (Id.) Dr. Pendyala, who treated plaintiff every four months since September 2003 (T121) completed a "Medical Opinion re: Ability To Do Work-Related Activities" dated March 17, 2005 (T168-71), in which opined that plaintiff's impairments and treatment would cause him to be absent from work approximately once a month (T171). Dr. Varallo, a psychiatrist, treated plaintiff from December 2, 2004 through March 2005 on a monthly basis for depression, but his March 2005 treatment notes indicate that plaintiff denied overt depression, anxious mood, and mood swings at that time (T167). Additionally, Dr. Burnett, the non-examining state agency review consultant, found that plaintiff had only mild limitations of daily living and social functioning and moderate difficulties with concentration, pace, and persistence (T148).

On the other hand, Dr. Lanze, a psychologist who treated plaintiff on 28 occasions from August 2004 to April 2005, completed a Mental Impairment Questionnaire dated March 10, 2005 indicating that plaintiff could not handle complex instructions or tasks, could not deal with the public, had marked restriction of his activities of daily living, extreme difficulties with social functioning, and constant difficulty maintaining concentration (T155-60). Dr. Lanze also stated in a letter to plaintiff's counsel dated April 3, 2005 that plaintiff's symptoms included poor memory, difficulty thinking and concentrating, decreased energy, recurrent panic attacks, sleep

disturbance, mood disturbance and appetite disturbance, and that his GAF never exceeded 57 during his treatment (T161).

Faced with this conflicting medical evidence, ALJ Slahta found that Dr. Lanze's assessment could not be afforded significant weight because "his own treatment notes do not document symptoms of the severity alleged" (T17). However, Dr. Lanze's treatment notes are not included in the record before me. Thus, I am handicapped in assessing whether the ALJ's opinion is supported by substantial evidence. See 42 U.S.C. §405(g) (judicial review of the Commissioner's disability determination is based on the "pleadings and transcript of the record").[3]

Additionally, although the record contains treatment notes from Harnath Clerk, M.D., who is plaintiff's "family doctor" (T208), and treated plaintiff from April 23, 2004 through March 17, 2005 (T168-182), there is no mention of his treatment, with the exception of a passing reference (see T17), in ALJ Slahta's decision. This is significant because Dr. Clerk's treatment notes clearly reference plaintiff's depression and carpal tunnel syndrome. See Fargnoli v. Massanari, 247 F.3d 34, 38 n. 3 (3d Cir. 2001) (where treatment notes contained in the record "were not mentioned in the ALJ's opinion, we do not know what significance, if any, they had in the ALJ's determination", therefore "[o]n remand, the ALJ should discuss the significance of these records and whether he is relying on any of them in reaching his determination").

---

[3] It is doubtful whether the treatment notes were ever part of the record before ALJ Slahta (see T190 (plaintiff's memorandum indicates that Dr. Lanze would not release his office notes to the ALJ)). Thus, ALJ Slahta should clarify this reference. However, if ALJ Slahta believed these notes to be important, he had an obligation to obtain them or to have plaintiff undergo a consultative psychiatric evaluation. See 20 C.F.R. §404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

Moreover, "[i]n assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." Matejka v. Barnhart, 386 F. Supp. 2d 198, 205-206 (W.D.N.Y. 2005) (Siragusa, J.). In addition to the objective medical evidence, the ALJ is required to consider "(1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." Id.; see SSR 96-7p, 1996 WL 374186, *4 (July 2, 1996) ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement . . .").

Here, the only reference to credibility found in ALJ Slahta's opinion is in his conclusion that plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision" (T20, ¶5). However, the body of the decision contains no specific discussion of ALJ Slahta's credibility findings. See Padgett v. Apfel, 62 F. Supp. 2d 1008, 1013 (W.D.N.Y. 1999) (Siragusa, J.) (finding the ALJ's conclusory determination as to the claimant's lack of credibility to be insufficient).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for

-13-

further development of the evidence. Remand is particularly appropriate where, . . . we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision." Pratts v. Chater, 94 F. 3d 34, 39 (2d Cir. 1996) (internal citations and quotation marks omitted).

## CONCLUSION

For these reasons, I recommend that the Commissioner's motion for judgment on the pleadings (Dkt. #10) be DENIED, and that the case be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED:	August 24, 2007

*/s/ Jeremiah J. McCarthy*
JEREMIAH J. MCCARTHY
United States Magistrate Judge